# Exhibit B

**EXCLUSIVE LICENSE AND ADMINISTRATION AGREEMENT**

This Exclusive License and Administration Agreement (this "Agreement") is made as of this 4th day of January, 2021, by and between Create Capital LLC, [redacted] ("Company"), and Shiloh Dynasty LLC f/s/o [redacted] p/k/a "Shiloh Dynasty", [redacted] ("Licensor").

**WHEREAS**, Licensor owns and/or controls certain Compositions (as defined herein) and the right to collect income from certain Masters (as defined herein), and Licensor wishes to grant to Company, on an exclusive and perpetual basis, the right to administer the Compositions and distribute and otherwise exploit the Masters, pursuant to the terms and conditions herein; and

**NOW, THEREFORE**, in consideration of the mutual covenants and undertakings herein contained, the sufficiency of which is hereby acknowledged, it is hereby agreed by the parties hereto as follows:

1. **Delivery; Scope of Agreement**. Immediately upon the full execution of this Agreement, Licensor shall deliver to Company those master recordings ("Master(s)") and the musical compositions embodied thereon (the "Composition(s)") as listed on Schedule A, attached hereto and incorporated herein by this reference. The Masters shall be delivered to Company in a format as requested by Company, and for the avoidance of doubt, Licensor's delivery of such Masters and Compositions shall include all related clearance documentation and any other paperwork or information requested or otherwise required by Company to effectuate the rights granted to Company herein.

2. **Grant of Rights**. Licensor hereby grants to Company the perpetual, exclusive right, privilege and license, throughout the world and universe (the "Territory"), to:

(a) License, transmit, make derivative works from (including, without limitation, to transcode and stream audio-only files and to create promotional materials), publicly perform and exhibit, and otherwise exploit and/or administer the Masters via vinyl record, compact disc, Internet, mobile, streaming, and any media now known or hereafter devised, and collect any and all gross monies earned in connection therewith (the "Master Collection Rights"). The Master Collection Rights shall include, without limitation and for the avoidance of doubt: (i) the exclusive right to collect any and all neighboring or performance rights income relating to the Masters (i.e., both the master owner's share and artist's share of SoundExchange revenue); (ii) the exclusive right to procure and enter into synchronization and/or "master use" licenses with respect to the Masters. Notwithstanding the foregoing, the Master Collection Rights shall specifically exclude the Masters listed on Schedule B, attached hereto and incorporated herein by this reference (the "Excluded Masters"). All rights in and to the Excluded Masters shall be excluded from the scope of this Agreement and shall be retained by Licensor and/or the relevant third-party that currently owns or controls such rights. Notwithstanding the foregoing, in the event that any Masters are subject to any previously existing recording and/or distribution agreement (excluding the Excluded Masters), Licensor shall instruct and cause any applicable third-party record labels or distributors to pay all monies payable to Licensor pursuant to such agreements, directly to Company, and such monies shall be treated as Net Receipts (as defined herein). Licensor causing such third-party record labels or distributors to pay all applicable monies directly to Company shall be considered a material term of this Agreement.

(b) Administer (as defined below) the Compositions, including without limitation all copyrights, rights to copyrights therein and any other rights relating to the Compositions, now known or which may hereafter be recognized or come into existence, and renewals and extensions thereof under applicable laws, treaties, regulations and directives now or hereafter enacted or in effect throughout the Territory, and all claims and causes of action relating to the Compositions accrued or hereafter accruing at any time. "Administer", as used herein, shall mean the right to exploit the Compositions, to print, publish, sell, use and license the use of the Compositions, and to execute any and all licenses and agreements affecting or relating to the Compositions, including, without limitation, licenses for mechanical reproduction, performance, synchronization, print and sub-publication, and the right to collect all monies earned prior to or following the date hereof from the reproduction, use or other exploitation of the Compositions (excluding, for the avoidance of doubt, the so-called "writer's share" of public performance income), which Licensor shall collect directly from Licensor's performance rights society), and to assign or license such rights to others. Licensor shall sign any letters of direction required by Company to effectuate the aforementioned rights to such income streams and shall cause its performance rights society to honor said letter of direction. To the extent that Licensor's performance rights society does not honor such letter of direction, Licensor shall immediately pay such amounts directly to Licensor promptly following its receipt of said income along with accompanying statements with

respect thereto. Notwithstanding the foregoing, the parties acknowledge and agree that Licensor is currently signed to an exclusive administration agreement with [redacted], the term of which expires on [redacted] and that pursuant to the [redacted] currently administers the Compositions. Licensor shall immediately deliver all Compositions to Licensee upon their reversion from [redacted] to Licensor at the expiration or termination of the term of the [redacted] Agreement for Company to Administer pursuant to the terms herein (subject to a one [1] year collection period during which [redacted] shall continue to collect all revenue deriving from the Compositions earned during the term of the [redacted]), and until such time, Licensor shall cause [redacted] to pay [redacted] payable to Licensor pursuant to the [redacted] directly to Licensee, pursuant to a so-called "letter of direction" approved by Licensee, to be deemed Net Receipts hereunder ([redacted] of such monies shall be credited towards recouping the Advance [as defined herein] until the Advance has been fully recouped). Notwithstanding the foregoing or anything to the contrary contained herein, in the event that Company has not received the aforementioned executed letter of direction within thirty (30) days following the complete execution of this Agreement, Company shall have the right to notify Licensor in writing (email shall suffice) that this Agreement is void *ab initio*.

(c) Use, and permit others to use, the names (including any professional name heretofore or hereafter adopted by Licensor), photographs, likenesses of and biographical materials concerning Licensor and any other performers who record, performed on, or otherwise rendered services in connection with the Masters, and any other writers or composers of a Composition, for advertising and trade purposes and in connection with the use and exploitation of the Masters and any Composition as set forth in this Agreement.

(d) Notwithstanding the foregoing, Company shall not, without Licensor's prior, written consent (email shall suffice, such approval not to be unreasonably withheld, conditioned or delayed, and such approval to be deemed granted if Licensor does not respond to Company's written request for such approval within five (5) business days of Company's request):

(i) License any Master for use as a so-called "sample" to be embodied on a previously unreleased master recording: (A) embodying the performances of a third-party recording artist with greater than or equal to [redacted] active monthly listeners on Spotify as of the date of Company's written request; and/or (B) that is released by a Major Label (as defined herein). As used herein, "Major Label" shall mean [redacted]).

(ii) Issue any Major Synch License (as defined herein) in connection with any Master or Composition. As used herein, "Major Synch License" shall mean a so-called "master use" license with respect to a Master, and/or synchronization license with respect to a Composition, for use: (A) in commercial advertisements, regardless of product or service type; (B) as a feature film or television program theme song; (C) in the opening or closing credits of a feature film; or (D) in the so-called "trailer" of a feature film or television program.

(e) For all matters herein which require Licensor's written approval, the parties hereby acknowledge and agree that: (i) email request and approval shall suffice; (ii) Licensor's approval shall be deemed granted if Licensor does not respond to Company's written request for such approval within five (5) business days of Company's request; and (iii) all approval requests shall be sent via email to [redacted], and [redacted].

**3. <u>Compensation</u>.** As full and complete consideration for the grant of rights by Licensor to Company hereunder, Company pay to Licensor:

(a) A recoupable advance in the amount of [redacted] (the "<u>Advance</u>"). The Advance shall be recoupable from [redacted] of Net Receipts (as defined herein), and shall be payable promptly following the later of: (i) full and complete execution of this Agreement; (ii) Licensor's delivery to Company of any audio files relating to the Masters or Compositions which Licensor currently has in its possession or can readily obtain.

(b) A royalty equal to [redacted] of Company's Net Receipts (as defined below) in connection with the Masters and Compositions (the "<u>Royalty</u>"). As used herein, "<u>Net Receipts</u>" shall mean the gross monies actually received by or credited to Company in connection with the Masters or Compositions, less all costs or

expenses incurred by Company in connection with the Masters or Compositions. Company shall compute Licensor's share of the Net Receipts due to Licensor hereunder and will render a statement and pay such Net Receipts, if any, within ninety (90) days following each June 30th and December 31st for the preceding half-year. No statement is required if Licensor's share of Net Receipts in a given accounting period is less than [redacted], and for the avoidance of doubt Licensor shall not be paid the Royalty unless and until Company has recouped the Advance in full from [redacted] of Net Receipts received by Company.

**4. Retention of Ownership in Masters and Compositions.** Except as set forth in this Agreement, nothing contained herein shall be deemed to convey to Company, or to any designee, assignee or licensee of Company, any ownership interest, including copyright, in or to the Masters or the Compositions, and the Masters and the Compositions shall remain the sole property of Licensor.

**5. Right to Edit and Alter Masters and Compositions.** Licensor hereby agrees that Company may edit, modify, alter, transpose or dramatize any Master or Composition, it being understood that any such edit or modification shall not result in any ownership rights or claims, including copyright, on the part of the Company with respect to the original Composition or Master. Licensor further agrees that Company may alter or edit the titles or other identifying information of the Compositions or Masters, including the insertion of identifying tags or serial numbers, in connection with the exclusive license granted hereunder.

**6. Warranties and Representations.**

(a) Licensor warrants and represents that:

(i) Licensor is under no disability, restriction or prohibition, whether contractual or otherwise, with respect to (A) Licensor's right to enter into this Agreement, and (B) Licensor's right and ability to grant the rights granted to Company hereunder other than as specified herein;

(ii) The Compositions, Masters, and any other Materials (as defined herein) are wholly original with Licensor and do not violate any law or infringe upon any common law or statutory rights of any third-party, including without limitation, contractual rights, intellectual and proprietary rights, copyrights and rights of privacy, and the administration, control, use and exploitation thereof by Company hereunder will not subject Company to liability of any kind to any third party. Except with respect to the Excluded Masters or as otherwise provided in paragraph 2(a) above, no party other than Licensor has or have any right, title or interest, including copyright, in or to the Masters or any of the Compositions. Every Composition and Master provided to Company hereunder and subject to this Agreement is original material, and no person other than Licensor wrote, or owns or controls, any of the Masters or Compositions. "Materials" as used in this subparagraph means, without limitation, any musical, artistic and literary materials, ideas, compositions and other intellectual properties, furnished or selected by Licensor, and/or contained in the Masters or Compositions.

(iii) Any metadata provided by Licensor in connection with the Masters and Compositions shall be as complete and accurate as reasonably possible, and will conform to all of Company's parameters for metadata and content specifications as provided by Company to the extent they are in line with current industry standards.

(iv) All of Licensor's representations and warranties shall be true and correct upon execution hereof and shall remain in effect for so long as Company, its licensees, assignees, transferees or successors in interest have any rights in or to the Masters and/or Compositions. Company's acceptance of the Masters and/or Compositions, or other materials hereunder, shall not constitute a waiver of any of Company's representations, warranties or agreements in respect thereof.

(v) Company shall not be required to make any payments of any nature for or in connection with the acquisition, exercise or exploitation of any rights granted to Company hereunder, except as specifically provided in this Agreement.

(vi) Following the date hereof, Licensor shall not enter into any agreement, take any other action or attempt any other action which would, or would be reasonably likely to, interfere with or prohibit the exercise by Company of the rights granted hereunder, or would otherwise be inconsistent with the rights granted to Company.

(vii) Licensor shall execute and deliver to Company, upon Company's request therefor, any documents as may be required by Company to effectuate the intent of this Agreement, and if Licensor shall fail or refuse to execute and deliver any such document within ten (10) business days following Company's request therefor, Licensor hereby appoints Company as Licensor's true and lawful attorney-in-fact to execute such inducement letter(s) in Licensor's name and on Licensor's behalf. Such power of attorney is irrevocable and is coupled with an interest.

(b) Company warrants and represents that:

(i) Company is under no disability, restriction or prohibition, whether contractual or otherwise, with respect to Company's right to enter into this Agreement; and

(ii) All of Company's representations and warranties shall be true and correct upon execution hereof and shall remain in effect for so long as Company, its licensees, assignees, transferees or successors in interest have any rights in or to the Masters and/or Compositions.

**7. Indemnity.**

(a) Licensor will at all times defend, indemnify, and hold harmless Company from and against any and all third party claims, damages, liabilities, costs and expenses, including legal expenses and reasonable counsel fees, arising out of or in connection with any alleged breach or breach by Licensor of any warranty, representation or agreement, express or implied, made by Licensor herein. Licensor will reimburse Company on demand for any payment made at any time in respect of which Company is entitled to be indemnified. Without limiting any of its other rights or remedies, upon the making or filing of any claim, action or demand arising out of any such alleged breach or breach by Licensor, Company shall be entitled to withhold from any amounts payable under this Agreement such amounts as are reasonably related to the amount of the action, claim or demand plus estimated counsel fees and costs pending the final disposition of such action, claim or demand. Licensor shall be notified of any such claim, action or demand and shall have the right, at Licensor's own expense, to participate in the defense thereof with counsel of Licensor's own choosing; provided, however, that Company's decision in connection with the defense or settlement of any such claim, action or demand shall be subject to mutual approval of the parties hereunder.

(b) Company will at all times indemnify and hold harmless Licensor from and against any and all third party claims, damages, liabilities, costs and expenses, including legal expenses and reasonable counsel fees, arising out of or in connection with any breach by Company of any warranty, representation or agreement, express or implied, made by Company herein. Company will reimburse Licensor on demand for any payment made at any time in respect of which Licensor is entitled to be indemnified. Licensor shall be notified of any such claim, action or demand and shall have the right, at Licensor's own expense, to participate in the defense thereof with counsel of Company's own choosing; provided, however, that Company's decision in connection with the defense or settlement of any such claim, action or demand shall be subject to mutual approval of the parties hereunder.

**8. Notices.** All notices hereunder shall be in writing and shall be sent by registered mail or certified mail, return receipt requested, postage prepaid and with receipt acknowledged, or by hand (to an officer if the party to be served is a corporation), or by telegraph, facsimile or e-mail, all charges prepaid, at the respective addresses set forth above, or such other address or addresses as may, from time to time, be designated in writing by either party; provided, that payments may be made by means of regular mail. The date of making of personal service or of mailing or of deposit in a telegraph office or transmission via facsimile, or transmission via e-mail, whichever shall be first, shall be deemed the date of service, except that notice of change of address shall be effective only from the date of its receipt. A copy of all notices to Company hereunder shall be simultaneously sent to [redacted]

**9. Assignment.** Company may sell, assign or license this Agreement and/or the rights granted to it hereunder in whole or in part. This Agreement is personal to Licensor and may not be assigned or transferred in whole or in part by Licensor to any third party without Company's consent; any purported assignment by Licensor shall be null and void *ab initio*. This Agreement is binding upon the parties hereto and their respective successors, heirs and permitted assigns.

**10. Entire Agreement, Severability.** This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof and cannot be changed or terminated except by an instrument signed by both

parties hereto. A waiver by either party of any term or condition of this Agreement in any instance shall not be deemed or construed as a waiver of such term or condition for the future, or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained in this Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either party. In the event that any one or more of the provisions of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. Moreover, if one or more of the provisions contained in this Agreement shall be held to be excessively broad as to duration, scope, activity or subject, such provisions shall be construed by limiting and reducing them so as to be enforceable to the maximum extent allowed by applicable law.

11. **Governing Law.** This Agreement shall be governed by New York law and the parties grant to New York Supreme Court, County of New York, or U.S. District Court, Southern District of New York, exclusive jurisdiction to hear any dispute arising herefrom. The parties hereto expressly waive their right to trial by jury in connection with any claim, demand or action arising out of this Agreement.

12. **Force Majeure.** If because of: act of God; unavoidable accident; fire; lockout, strike or other labor dispute; riot or civil commotion; act of public enemy; pandemic or other global crisis; enactment, rule, order or act of any government or governmental instrumentality (whether federal, state, local or foreign); failure of computer facilities; loss of books or records; or other cause of a similar or different nature not reasonably within Company's control, Company is materially hampered in the exploitation or administration of the Compositions and/or Masters, then, without limiting Company's rights, Company shall be excused of its obligations hereunder during such suspension, including its obligation to account and pay royalties.

13. **Confidentiality**. Neither party (the "Receiving Party") will disclose the terms of this Agreement or any Confidential Information (as defined herein) of the other party (the "Disclosing Party") to any third-party except: (a) as may be required by any court of competent jurisdiction, governmental agency, law or regulation (in such event, the Receiving Party shall notify the Disclosing Party before such disclosure so as to give the Disclosing Party an opportunity to apply for a confidentiality order or similar remedy); (b) as part of the normal reporting or review procedure to the Receiving Party's accountants, auditors, employees, legal counsel, and employees of partners, parent and subsidiary need to know to perform their regular responsibilities to the Receiving Party may be disclosed to such persons, and provided further that the Receiving Party will be responsible to the Disclosing Party for any unauthorized disclosure of Confidential Information by them; (c) information which has entered the public domain through no fault of the Receiving Party or any persons to whom the Receiving Party has provided Confidential Information as permitted hereunder; and (d) with the prior written consent of the Disclosing Party. As used herein, "Confidential Information" shall mean the terms of this Agreement and any non-public information, data, usage reports, revenue reports, or other materials provided by one party to the other under or in connection with this Agreement, and any other information the Receiving Party should reasonably have understood under the circumstances should be treated as confidential, whether or not the specific designation "confidential" or any similar designation is used, such as royalty statements and similar information. Neither party shall use any Confidential Information except as necessary for the express purpose of carrying out its respective obligations under this Agreement. The terms of this paragraph 13 shall survive the expiration or termination of the Agreement.

14. **Cure.** Company shall not be in default of any term, condition, or provision of this agreement unless and until Licensor shall give written notice specifying such default in detail and such default, if curable, shall not have been cured within thirty (30) days after receipt of such notice.

15. **Paragraph Headings.** Paragraph headings used herein are for convenience only, and shall not affect the interpretation of nor be deemed to be a part of this Agreement.

16. **Legal Representation.** Licensor acknowledges and agrees that Licensor has read this Agreement and have been advised by Company of the significant importance of retaining an independent attorney of Licensor's choice to review this Agreement on Licensor's behalf. Licensor acknowledges and agrees that Licensor has had the unrestricted opportunity to be represented by an independent attorney. In the event of Licensor's failure to obtain an independent attorney or waiver thereof, Licensor hereby warrants, represents and agrees that Licensor will not attempt to use such failure and/or waiver as a basis to avoid any obligations under this Agreement, or to invalidate this Agreement or to render this Agreement or any part thereof unenforceable.

**17.** **Counterparts.** This Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement. Facsimile, electronic (e.g., via DocuSign) and photocopied signatures of this Agreement shall be treated as originals for all purposes relating to this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the day and year first written above.

ACCEPTED AND AGREED:

CREATE CAPITAL LLC

[redacted]

ACCEPTED AND AGREED:

SHILOH DYNASTY LLC

[redacted]

**SCHEDULE A**

MASTERS AND COMPOSITIONS

I Know You So Well
Drunk and confused
So Low
Trust Nobody
Don't Go To Sleep
Give It to me Straight
Freestyle feels
Too Much
Losing Interest
Tell Me Why
So Innocent
Imagination
Keep you safe
Jocelyn Flores
Everybody Dies In Their Nightmares
Carry On
Guardian Angel
I’m closing my eyes
I’m sorry
DGAF
Tell Me Why
Climax

**SCHEDULE B**

EXCLUDED MASTERS

| Artist Licensee | New Recording Title |
|---|---|
| [redacted] | Jocelyn Flores<br>Everybody Dies In Their Nightmares<br>Carry On<br>Guardian Angel |
| [redacted] | I'm closing my eyes |
| [redacted] | I'm sorry |
| [redacted] | DGAF |
| [redacted] | Tell Me Why |
| [redacted] | Climax |

**PAYMENT DIRECTION LETTER**

To: ALL RECORD MANUFACTURERS LICENSED TO MECHANICALLY REPRODUCE THE COMPOSITION SPECIFIED HEREINBELOW

ALL PERFORMING RIGHTS SOCIETIES
ALL OTHER PARTIES IN INTEREST

Please be advised that effective as of April, 1, 2021, we have granted to Create Capital LLC and their respective licensees and assigns, the exclusive right, throughout the world, in respect of our interest in those compositions subject to our agreement with Create Capital LLC of even date herewith (the "Compositions"), of which the undersigned is the copyright proprietor or administrator:

(1) to license and cause others to license the use of the Compositions; and

(2) to administer and grant rights in and to the Compositions and the copyright therein; and

(3) to publish and sell sheet music and/or folios of the Compositions if it so elects; and

(4) to collect all monies payable with respect to the Compositions, including monies earned but not paid prior to the effective date hereof; and

(5) to otherwise administer the Compositions and the copyright therein and to act as the publisher thereof.

The foregoing authorization and direction shall remain in full force and effect until modified or terminated by both the undersigned and Administrator.

Very truly yours,

[redacted]